UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BRIANCA T. ADAMS,

    Plaintiff,                                                      Case No. 9:23-cv-81519

v.

SKY BLUE FINANCIAL SERVICES,
INC., d/b/a SKY BLUE CREDIT,

    Defendant.
_____/

## COMPLAINT

**NOW COMES** BRIANCA T. ADAMS ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of SKY BLUE FINANCIAL SERVICES, INC., doing business as SKY BLUE CREDIT ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679 *et seq.*, the North Carolina Credit Repair Services Act ("NCCRSA") under N.C. Gen. Stat. § 66-200 *et seq.*, and the North Carolina Consumer Protection Statute pursuant to N.C. Gen. Stat. § 75-1.1(a) *et seq.*, stemming from Defendant's unlawful conduct.

1

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA pursuant to 15 U.S.C. § 1679 *et seq.*, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Southern District of Florida, and all of the events or omissions giving rise to Plaintiff's claims occurred in this Southern District of Florida.

## PARTIES

5. Plaintiff is a consumer and natural person, over 18 years of age, residing in Winston Salem, North Carolina.

6. Defendant is a credit repair organization that claims to provide easy-to-use services to consumers who wish to understand and improve their credit reports and scores. Defendant maintains its principal place of business at 5401 Broken Sound Blvd. NW, Suite 202, Boca Raton, Florida 33487.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In around March 2019, Plaintiff was interested in addressing various accounts that were appearing on her credit reports and wanted to improve her overall credit scores.

9. After diligent research, Plaintiff happened upon Defendant due to its representations that it could help consumers remove negatively reporting items and improve their creditworthiness.

10. As such, Plaintiff spoke with Defendant and expressed her desire to improve her credit scores.

11. Defendant made explicit promises to Plaintiff that it would improve her credit scores by challenging all derogatory accounts, eradicating collections and rectifying negative entries on her consumer credit reports.

12. Moreover, Defendant assured Plaintiff that it possessed the necessary expertise and experience to achieve such objectives.

13. Plaintiff detrimentally relied on Defendant's representations and, based on these promises, believed that Defendant would effectively enhance her creditworthiness.

14. In March 2019, finding Defendant's services appealing, Plaintiff entered into a contractual agreement with Defendant for its credit repair services. In accordance with the agreement, Plaintiff was required to pay a setup fee of $79 and reoccurring monthly payments of approximately $79.

15. Defendant's upfront fee was paid prior to Defendant completely performing any work for Plaintiff.

16. Plaintiff proceeded to make her monthly payments to Defendant in a consistent and timely manner.

17. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair program.

18. Contrary to Defendant's express representations, Defendant neglected to initiate remedial action on Plaintiff's behalf.

19. Specifically, Plaintiff saw only a couple derogatory or negative accounts removed from her credit report and Plaintiff's credit scores did not improve after enrolling into Defendant's credit repair program.

20. Despite the passage of considerable time and financial investment, Plaintiff's credit score did not improve as a result of Defendant's inactions. In fact, Plaintiff's credit scores dropped considerably between the time Plaintiff started and ended her services with Defendant.

21. Plaintiff relied on Defendant's representations and entered into the contract with a legitimate expectation of achieving an improved credit score and the removal of all derogatory credit items, however, Defendant failed to properly engage in the representations it purported to Plaintiff during the time she enrolled.

22. Experiencing frustration and dissatisfaction with the lack of tangible progress, Plaintiff opted to terminate her relationship with Defendant in around December 2019.

23. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, payments made to Defendant in violation of federal law, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

24. Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth herein.

25. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

26. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a.    **Violations of CROA § 1679b(a)**

27.    The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

28.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant touted the efficacy of its credit repair services and that Plaintiff could expect an improved credit score after enrolling in Defendant's program as long as she made payments for its services. Plaintiff made her such payments; however, Defendant failed to improve Plaintiff's creditworthiness and seemingly failed to properly engage in the services it represented.

29.    Moreover, Defendant's representations that it would improve Plaintiff's credit score, based on its assurances and efficacy induced Plaintiff to sign up for Defendant's program and would not have done so she knew to what extent Defendant had failed to fulfill its promises and representations.

30.    Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies.

6

Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. § 1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

31. Defendant further violated the CROA through its deceptive and misleading conduct surrounding the way it charges consumers. Upon information and belief, Defendant charges consumers for services before fully and completely performing those services in the manner they were represented, yet nevertheless attempts to disclaim such conduct in its contract by saying that it does not charge consumers before fully completing its services. This conduct is part of deceptive scheme where Defendant seeks to insulate itself from liability under the CROA through contractual language that is inherently misleading and contradictory to reality. Further, Defendant knows that it is charging for consumers for ineffective services, yet will seek to point to its "disputes" sent as purportedly justifying the exorbitant fees it charges consumers.

    b.    **Violations of CROA § 1679b(b)**

32. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

Case 9:23-cv-81519-RLR   Document 1   Entered on FLSD Docket 11/27/2023   Page 8 of 12

33. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services is performed, is inherently in violation of the CROA. Further, although Defendant was charging Plaintiff for purported "legal" services, it never actually provided such services, and certainly did not perform them prior to charging Plaintiff. Defendant similarly withheld sums for credit repair services it never actually performed. Plaintiff paid Defendant substantially more than the amount of debt it ended up settling for Plaintiff, further illustrating the extent to which Defendant has improperly maintained fees for services it never actually performed.

**WHEREFORE**, Plaintiff BRIANCA ADAMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

8

**COUNT II – VIOLATIONS OF THE NORTH CAROLINA CREDIT REPAIR SERVICES ACT**

34. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff is a "consumer" as defined by N.C. Gen. Stat. § 66-221(3).

36. Defendant is a "credit repair business" as defined by N.C. Gen. Stat. § 66-221(1).

    a.    **Violations of NCCRSA § 66-223**

37. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(1), prohibits a credit repair business from charging or receiving "any money or other valuable consideration prior to the full and complete performance of the services that the credit repair business has agreed to perform for or on behalf of the consumer."

38. Defendant violated the above provision of the NCCRSA in much the same way it violated § 1679b(b) of the CROA.

39. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(3), provides that no credit repair business shall "[r]epresent that it can directly or indirectly arrange for the removal of derogatory credit information from the consumer's credit report or otherwise improve the consumer's credit report or credit standing, provided, this shall not prevent truthful, unexaggerated statements about the consumer's rights under existing law regarding his credit history or regarding access to his credit file."

40. Defendant violated the above provision of the NCCRSA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

41. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(5), provides that no credit repair business shall "[m]ake or use any untrue or misleading representations in the offer or sale of the services of a credit repair business or engaged, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit repair business."

42. Defendant violated the above provision of the NCCRSA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

43. The NCCRSA further provides that a violation of its provisions constitutes an unfair trade practice pursuant to N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 66-225(f).

**WHEREFORE**, Plaintiff BRIANCA T. ADAMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16;

c. Awarding Plaintiff punitive damages pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16.1; and,

    e.    Awarding any other relief this Honorable Court deems just and appropriate.

**COUNT III - VIOLATIONS OF THE NORTH CAROLINA CONSUMER PROTECTION STATUTE**

44.    Plaintiff repeats and realleges paragraphs 1 through 43 as though fully set forth herein.

45.    N.C. Gen. Stat. § 75-1.1(a) states:

> "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

46.    Defendant violated N.C. Gen. Stat. § 75-1.1(a) through its provision of unlawful and deficient services to Plaintiff.

47.    Defendant's failure to comply with N.C. Gen. Stat. § 14-424 illustrates its unfair, deceptive, and abusive provision of unlawful services to Plaintiff.

48.    Furthermore, violations of the NCCRSA constitute violations of the above prohibitions.

49.    Even further, Defendant's generally deceptive and misleading conduct further illustrates its violations of N.C. law.

**WHEREFORE**, Plaintiff BRIANCA T. ADAMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.    Awarding Plaintiff damages, in an amount to be determined at trial, as provided under N.C. Gen. Stat. § 75-16;

11

  c.  Awarding Plaintiff costs and reasonable attorney fees as provided under N.C. Gen. Stat. § 75-16.1; and

  d.  Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: November 27, 2023        Respectfully submitted,

                       /s/ *Alexander J. Taylor*
                       Alexander J. Taylor, Esq.
                       Sulaiman Law Group, Ltd.
                       2500 S Highland Ave, Suite 200
                       Lombard, IL 60148
                       Telephone: (630) 575-8181
                       Fax: (630) 575-8188
                       ataylor@sulaimanlaw.com
                       *Counsel for Plaintiff*